**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | | |
|---|---|---|
| **MAXUS METROPOLITAN, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No: 20-cv-00095-FJG** |
| | ) | |
| **TRAVELERS PROPERTY CASUALTY** | ) | |
| **COMPANY OF AMERICA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**SUGGESTIONS IN SUPPORT OF TRAVELERS
PROPERTY CASUALTY COMPANY OF AMERICA'S
<u>MOTION TO EXCLUDE EXPERT TESTIMONY OF CHUCK HOWARTH</u>**

Dale L. Beckerman, MO Bar #26937
Daniel E. Hamann, MO Bar #28164
DEACY & DEACY, LLP
920 Main Street, Suite 1000
Kansas City, Missouri 64105
Telephone: (816) 421-4000
Facsimile: (816) 421-7880
dlb@deacylaw.com
deh@deacylaw.com

Brenen G. Ely (*pro hac vice*)
Kenneth W. Boyles, Jr. (*pro hac vice*)
ELY & ISENBERG, LLC
3500 Blue Lake Drive, Suite 345
Birmingham, Alabama 35243
Telephone: (205) 313-1200
Facsimile: (205) 313-1201
bely@elylawllc.com
kboyles@elylawllc.com

*Attorneys for Defendant Travelers Property Casualty Company of America*

# TABLE OF CONTENTS

I.      **INTRODUCTION**……………………………………………………………..5

II.     **LEGAL STANDARD**………………………………………………………..7

III.     **ARGUMENT**……………………………………………………………..8

      A.    Howarth is not Qualified to Testify as to the Fire's Behavior or Any Disputed Causation Issues……………...…………………………………………8

      B.    Howarth's Opinions are not Based on Sufficient Facts or Reliable Methodology………………….…………………………………………10

      C.    Howarth's Proffered Opinions are Inadmissible Conclusions of Law……..……12

          1.    Howarth's Legal Conclusions as to Contract Construction and Interpretation Are Due to be Excluded……………….……………..13

          2.    Howarth's Statements Regarding Intent and Travelers Investigation and Handling of the Claim Are Due to Be Excluded……….16

      D.    Howarth's "Summary of Opinions About the Handling of the Fire Claim" are not Based on Sufficient Facts…………………………..…………17

      E.    Howarth's Opinions are Inadmissible Due to Plaintiff's Failure to Comply with the Requirements of Federal Rule of Civil Procedure 26(a)(2)…..…………18

IV.     **CONCLUSION**…………………………………………………………..21

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*1st Source Bank v. First Resource Fed. Credit Union*, 167 F.R.D. 61 (N. D. Ind. 1996).......19, 20

*Am. Auto. Ins. Co. v. Omega Flex, Inc.,* 783 F.3d 720 (8th Cir. 2015)……………………………10

*Am. Home Assur. Co. v. Federal Ins. Co.*, No. 06-3237-CV-W-FJG,
2007 WL 1459816 (W.D. Mo. May 15, 2007)……………………………………………14, 15, 17

*Carneal v. Travelers Cas. Ins. of Am.* No. 5:12-CV-00174,
2013 WL 5939879 (W.D. Ky. Nov. 5, 2013)…………………….…………………………9, 15

*China Res. Prods. (U.S.A.) Ltd. v. Fayda Int'l, Inc*., 856 F. Supp. 856 (D. Del. 1994)………...….19

*Cole v. Owners Insurance*, 326 F. Supp. 3d 1307 (N.D. Ala. Mar. 29, 2018)……………………..15

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)…………………………7, 8

*Glastetter v. Novartis Pharm. Corp*., 252 F.3d 986 (8th Cir. 2001) ……………………….....10

*Hallmark Cards, Inc. v. Monitor Clipper Partners, LLC* No. 08-0840-CV-W-ODS,
2012 WL 3047308 (W.D. Mo. July 25, 2012)…………………………………………………16

*Haman, Inc. v. Chubb Custom Ins. Co.*, No. 2:18-CV-01534-KOB,
2021 WL 913338 (N.D. Ala. Mar. 10, 2021) ………………………….……………....9, 15

*Hanifl v. Ethicon, Inc.*, No. 4:20-CV-00527-DGK,
2021 WL 830183 (W.D. Mo. Mar. 4, 2021)……………………………………………………..8

*Hogan v. AT&T*, 812 F.2d 409 (8th Cir. 1987) ...………………………………………………17

*In re: Acceptance Insurance Companies Securities Litigation*, 423 F.3d 899 (8th Cir. 2005) ……13

*In Re RFC & ResCap Liquidating Tr. Litig.*,
No. 13-CV-3451 (SRN/HB), 2018 WL 4489685, (D. Minn. Sept. 19, 2018) …………………...16

*J.B. Hunt Transp., Inc. v. Gen. Motors Corp.,* 243 F.3d 441 (8th Cir. 2001)…………………...12

*J.E. Jones Const. Co. v. Marsh USA, Inc*.,
4:06CV1759 HEA, 2008 WL 2225732 (E.D.Mo. 2008)…...……………………………………13

*Jackson v. Mizuho Orthopedic Sys., Inc*.,
No. 11-00799-CV-W-GAF, 2012 WL 13028557 (W.D. Mo. Aug. 22, 2012)..……… 13, 14, 16, 17

3

*Tactical Stop-Loss LLC v. Travelers Cas. & Sur. Co. of Am.*,
No. 08-0962-CV-W-FJG, 2010 WL 427779 (W.D. Mo. Feb. 2, 2010) …………..……..8, 9, 18, 21

*Upsher-Smith Labs, Inc. v. Mylan Labs, Inc*., 944 F. Supp. 1411 (D. Minn. 1996)………………19

**<u>Rules and Statutes</u>**

Federal Rule of Civil Procedure 26……………………………………………….. 6, 18, 19, 21, 22

Federal Rule of Civil Procedure Rule 37………………………………………………………19

Federal Rule of Evidence 403………………………………………………………...10, 22

Federal Rule of Evidence 702 ……………………………………………………… 5, 7, 8, 10, 14

4

Defendant Travelers Property Casualty Company of America ("Travelers"), pursuant to Rule 702 of the Federal Rules of Evidence, submits the following Suggestions in Support of its Motion to Exclude Expert Testimony of Chuck Howarth:

## I.  INTRODUCTION

Through the present lawsuit, Maxus Metropolitan, LLC ("Maxus" or "Plaintiff") asserts claims against Travelers arising from a September 27, 2018 fire that destroyed a stand-alone building known as "Phase 6," which is one of three buildings that make up the multi-building apartment complex known as The Metropolitan located in Birmingham, Alabama. The Phase 6 building was connected to one of the other buildings of the Metropolitan by an open-air walkway. There was no other connection between the Phase 6 building that burned and the other buildings, and their interiors were not connected in any way.  At the time of the fire, the Phase 6 was under construction.  The other buildings of the Metropolitan that were not involved in the fire were at various stages of completion with some under construction and other occupied by tenants.

Travelers has already paid over $6,000,000 in insurance proceeds as a result of the fire that burned Phase 6. Plaintiff now claims to be entitled to more money for alleged soot and char contamination in the interiors of other buildings that did not catch fire. After investigating the soot and char claim, Travelers determined that soot and char from the fire had not infiltrated into the other buildings as Maxus and its consultants claimed.

On December 19, 2019, Plaintiff filed this action in the Circuit Court of Clay County, Missouri, which was removed to this Court on February 11, 2020.  Plaintiff has asserted a breach of contract as well as a vexatious refusal to pay claim against Travelers.

On or about April 15, 2019, Plaintiff entered into an Appraisal Employment Agreement ("Agreement") with The Howarth Group, whereby it retained Howarth and his company (The

5

Howarth Group) as "their appraiser for the purpose of determining the amount of the loss and for presenting this valuation to the appraisal panel and/or the Carrier." Ex. 1. Pursuant to the Agreement, Plaintiff "acknowledge[d] that [The Howarth Group] will not act as an advocate on their behalf, but will present to the appraiser appointed by the Carrier as well as to the umpire, its conscientious, impartial and well-considered opinions." Ex. 1 ¶ 1. Howarth (and his company) continued in the role as Plaintiff's appraiser well after Plaintiff filed suit, and on March 19, 2020, Howarth maintained that his "role ha[d] not changed from day one." Ex. 2.

On October 6, 2020, Plaintiff filed its expert witness disclosures designating Chuck Howarth ("Howarth") as one of its expert witnesses. (Doc. 34). Howarth provided a five-page report, which purports to provide a summary of his opinions regarding the cause of loss, calculation of damages, and Travelers' investigation and handling of Plaintiff's claim. *See* Ex. 3. ("Expert Report of Church Howarth, CPCU"). Howarth's proposed testimony does not provide a finite number of opinions but, instead, falls into three general categories: (1) assessing the cause and extent of damage to the Metropolitan; (2) opining as to the valuation of Plaintiff's claimed damage; and (3) assessing Travelers' investigation and handling of Plaintiff's insurance claim (*i.e.,* opining whether Traveler's handling of the Plaintiff's claim constituted bad faith). *See* Ex. 3.

Howarth overstepped the boundaries for expert testimony in several respects: (1) Howarth is not qualified to offer opinions as to disputed causation issues; (2) Howarth's testimony is not based on sufficient facts or reliable methodology; and (3) Howarth's opinions relating to contract interpretation, Travelers' intent, and Travelers' investigation and handling of Plaintiff's insurance claims are inadmissible legal conclusions. In addition, Howarth's report fails to comply with the mandatory requirements of Federal Rule of Civil Procedure 26(b) and the Court's Amended

Scheduling Order. (Doc. 44). In turn, Howarth's report is due to be struck, and he should be excluded from testifying as an expert in this case.

## II.    LEGAL STANDARD

Federal Rule of Evidence 702 governs admissibility of expert testimony. *See* Fed. R. Evid. 702. Under Rule 702, expert testimony is admissible if:

(a)    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b)    the testimony is based on sufficient facts or data;

(c)    the testimony is the product of reliable principles and methods; and

(d)    the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court established a gatekeeping responsibility on district courts to make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." 509 U.S. 579, 592–93 (1993); *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147, 149 (1999) (holding that district court's gatekeeping responsibility applies not only to scientific testimony but also to technical and specialized knowledge).

The Eighth Circuit Court of Appeals has stated that proposed expert testimony must meet three criteria to be admissible under Rule 702. *Lauzon v. Senco Prods., Inc.,* 270 F.3d 681, 686 (8th Cir.2001). "First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact." *Lauzon,* 270 F.3d at 686 (citation omitted). "Second, the proposed witness must be qualified to assist the finder of

7

fact." *Id.* (citation omitted). "Third, the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires." *Id.* (internal quotation marks omitted). "In other words, the proponent must show that the expert's opinions are relevant, the expert is qualified to offer them, and 'the methodology underlying [her] conclusions is scientifically valid.'" *Hanifl v. Ethicon, Inc.*, No. 4:20-CV-00527-DGK, 2021 WL 830183, at *1 (W.D. Mo. Mar. 4, 2021) (alteration in original) (citing *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757–58 (8th Cir. 2006)) (holding expert precluded from testifying in the form of legal conclusion).

The touchstone of Rule 702 is the helpfulness of the expert testimony (*i.e.*, whether it will assist the trier of fact to understand the evidence or to determine a fact in issue). *See Nichols v. Am. Nat'l Ins. Co.*, 154 F.3d 875, 882 (8th Cir. 1998). Therefore, specific subject areas of proposed expert testimony must be examined to ascertain whether each is sufficiently tied to the facts of the case and will be helpful to the trier of fact. *See Daubert*, 509 U.S. at 597 ("trial judge [assigned] the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand").

## III.    ARGUMENT

### A.    Howarth is not Qualified to Testify as to the Fire's Behavior or Any Disputed Causation Issues

"The proponent of expert evidence must show by a preponderance of the evidence that the expert is qualified to render his opinion and the methodology underlying his conclusions is valid." *Tactical Stop-Loss LLC v. Travelers Cas. & Sur. Co. of Am.*, No. 08-0962-CV-W-FJG, 2010 WL 427779, at *3 (W.D. Mo. Feb. 2, 2010) (citing *Marmo v. Tyson Fresh Meats, Inc.*, 457 F. 3d 748, 857-58 (8th Cir. 2006)). Howarth is a public adjuster and appraiser. Ex. 3. He holds a degree in theology from Holmes Bible College (Greenville, South Carolina). Ex. 3. He is not an engineer,

fire dynamics expert, or industrial hygienist. Howarth does not have a degree or any formal training in any scientific field. According to Howarth's curriculum vitae, Howarth has expert witness and insurance claims adjusting experience in building damage <u>valuation</u>, business interruption <u>calculation</u>, and <u>appraising the values</u> of property insurance claims. Ex. 3. Although Howarth may have experience in **assessing the value** of Plaintiff's alleged damages, neither Howarth's report nor his curriculum vitae reveals any experience qualifying Howarth to testify as to any alleged **cause of loss**. Accordingly, Howarth's causation opinions must be struck in their entirety. *See Tactical Stop-Loss*, 2010 WL 427779, at *4.

In fact, two district courts have found Howarth unqualified to offer expert testimony as to causation. In *Carneal v. Travelers Cas. Ins. of Am.* No. 5:12-CV-00174, 2013 WL 5939879, at *3 (W.D. Ky. Nov. 5, 2013), the Western District of Kentucky found that "[t]o the extent [Howarth] intend[ed]" to render an opinion as to the cause of loss in a case involving a dispute as to whether water damage was attributable to storm damage or the improper installation of an EPDM rubber membrane roof, his testimony would be excluded. *Carneal,* 2013 WL 5939879, at *3. There, the court found that "Plaintiffs ha[d] not shown that Howarth is qualified to render such an opinion, nor [was] the [c]ourt satisfied that such testimony rest[ed] on a reliable foundation in Howarth's professional knowledge and experience." *Id.*

Most recently, the Northern District of Alabama reached a similar result and excluded Howarth's testimony as to the disputed cause of loss. *See Haman, Inc. v. Chubb Custom Ins. Co.*, No. 2:18-CV-01534-KOB, 2021 WL 913338, at *1 (N.D. Ala. Mar. 10, 2021). In that case, the court determined that Howarth was "not qualified by education or experience to give an opinion as to whether winds caused damage to the roof or whether smoke deposited soot in all 80 rooms of [Plaintiff's] motel building." *Haman, Inc.*, 2021 WL 913338, at *3.

9

Howarth clearly lacks the experience necessary to give expert testimony under *Daubert* and Rule 702 as to a disputed cause of loss. Therefore, given Howarth's lack of experience, his statements regarding any cause of alleged damage must be struck from his report, and he is due to be excluded from testifying as to the disputed cause of loss in the present case.

### B. Howarth's Opinions are not Based on Sufficient Facts or Reliable Methodology

Notwithstanding the fact that Howarth is unqualified to testify as to disputed causation, he provides no discernible methodology or foundation in formulating such opinions. Instead, Howarth's opinions regarding causation are inadmissible speculation and subjective beliefs. Courts must "separate[] expert opinion evidence based on 'good grounds' from subjective speculation that masquerades as scientific knowledge." *Glastetter v. Novartis Pharms. Corp.,* 252 F. 3d 986, 989 (8th Cir. 2001). "[E]xpert testimony that is connected to existing data only by a bare assertion resting on the authority of the expert" should be rejected. *People v. Ramirez*, 155 P.3d 371, 379 (Colo. 2007) (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)). That is because Rule 702 requires that expert testimony be helpful to the trier of fact. *See Fed. R. Evid.* 702. Such conclusory opinions amount to "*ipse dixit*" opinions, which "'provide little assistance to the jury,' as Rule 702(a) requires, and 'may run afoul' of Rule 403 if the jury affords it more weight than warranted." *See Am. Auto. Ins. Co. v. Omega Flex, Inc.,* 783 F.3d 720, 725 (8th Cir. 2015).

Howarth's Report contains the following unsupported statements and opinions:

- These plumbing lines, which are normally bright white, were gray and this discoloration grew darker as I moved toward phase-5, which would have been the direction from which much of the smoke would have flowed through phase-4.

Ex. 3, p. 2.

- These broken windows were one of the pathways the heated smoke used to enter phase-5 and the other phases.

- The Travelers adjusting team ignored the visible smoke stains in the hallways and apartment rooms and took no steps to determine what these stains were caused by.

Ex. 3, p. 3.

- The phase-5 roof was badly damaged from fire embers and water. The exterior siding, especially the side that faced phase-6, was damaged by the fire and heat, as well as the water from the high-pressure hoses being used by the fire department in their effort to try to save phase-5 from being also reduced to ashes.

- Phases 1-4 – The cost to return the donut building and phase-4 to the exact condition that each was in prior to the fire, which unfortunately has to include for the donut building the opening up all wall and ceiling cavities for removal of the soot/char damages from this subject fire, is [$]21,748,010.34. (The best I can determine at this time).

- Phase 5 - The cost to repair phase-5 to a condition less than what it was in at the time of the loss, but a compromised condition that the insured felt they could live with given the disastrous delays being experienced to the resolution of this claim, is [$]4,615,318.43, (the best I can determine at this time).

- Phase-6 - The cost to return phase-6 to the exact condition that it was in prior to the fire is [$]7,002,693.00, (The best I can determine at this time).

- The valuation of the actual damage by the Travelers adjusting team at [$]3,519,607.19 was not even close to accurate, and overlooked a lot of the damage from fire, smoke and water to all six (6) of the building phases.

Ex 3, p. 4.

- Travelers' adjusting team's insufficient investigation into the condition of all of the five (5) remaining building phases, and the extent of the fire, smoke and water damages, resulted in distorted and incorrect conclusions about the overall loss. There was and is abundant visual evidence on site of the extensive nature of the smoke and water damages that they overlooked.

- This kind of conduct is awful, and has resulted in extensive damages to this policyholder.

Ex. 3, p. 5.

11

Each of these statements from Howarth's report are neither based on sufficient facts or data nor the product of reliable principles. In fact, there is no way to discern whether Howarth reliably applied any principles and methods to the facts of the case. Howarth did not conduct any independent analysis in determining either the need for or scope of any purported damage to the Metropolitan. Howarth did not compile any facts to support his cause of loss opinions and did not conduct any inquiry to rule out other, non-covered causes of loss.

Moreover, because Howarth's opinions as to causation and damages are based upon the inadmissible opinions and conclusions of the report of one of Plaintiff's other expert witnesses, Thomas Irmiter, they should be discounted as well. In addition to statements regarding the extent of damage to the Metropolitan, Howarth has included the following statements in his report, which are based solely upon Irmiter's opinions:

- It was determined from the FBS sampling and lab analysis that all of these visible stains were in fact smoke and soot/char stains that resulted from the subject fire. Additionally, and unfortunately for the insured, it was discovered that smoke and soot was also present inside wall and ceiling cavities in all building phases where drywall finishes had been installed.

Ex. 3, p. 3.

Similar to Howarth's conclusory statements, Howarth's statements based solely on Irmiter's inadmissible opinions are also due to be excluded. *See J.B. Hunt Transp., Inc. v. Gen. Motors Corp.,* 243 F.3d 441, 444 (8th Cir. 2001) (district court properly excluded proffered expert's testimony, which was "inextricably linked" and "derivative" of another expert's excluded testimony). Because such cause of loss opinions of Irmiter are inadmissible, Howarth may not bootstrap Irmiter's inadmissible opinions as his own. Accordingly, such statements are due to be struck from Howarth's report, and he is further due to be excluded from testifying as to the disputed cause of loss in the present case.

12

### C. Howarth's Proffered Opinions are Inadmissible Conclusions of Law.

"[E]xpert testimony on legal matters is not admissible." *S. Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc.*, 320 F.3d 838, 841 (8th Cir. 2003) (citing *United States v. Klaphake,* 64 F.3d 435, 438–39 (8th Cir.1995)). "[E]vidence that merely tells the jury what result to reach is not sufficiently helpful to the trier of fact to be admissible." *Kostelecky v. NL Acme Tool/NL Indus., Inc.*, 837 F.2d 828, 830 (8th Cir. 1988) (citing *Hogan v. American Telephone and Telegraph Co.,* 812 F.2d 409, 411–12 (8th Cir.1987)). Moreover, "[a]bsent any need to clarify or define terms of art, science, or trade, expert opinion testimony to interpret contract language is inadmissible. *Jackson v. Mizuho Orthopedic Sys., Inc.,* 2012 WL 13028557, at *3 (citing *N. Am. Specialty Ins. Co. v. Myers*, 111 F.3d 1273, 1281 (6th Cir. 1997)).

Howarth's report contains numerous inadmissible legal conclusions. Throughout his report, Howarth opines as to the meaning of contract terms and claims that Travelers violated insurance industry standards and acted unreasonably and in bad faith. These opinions are inadmissible because they invade the province of the jury who should be the ultimate trier of fact, not an expert such as Howarth. Accordingly, Howarth's legal conclusions should be excluded as they attempt to usurp the Court's function. *See e.g., In re: Acceptance Insurance Companies Securities Litigation*, 423 F.3d 899 (8th Cir. 2005) (affirming district court's holding and finding that "[t]he opinions themselves were legal conclusions about the facts of the case as presented to the experts by the shareholders. As a result, the expert opinions were merely opinions meant to substitute the judgment of the district court.").[1]

---

[1] In *J.E. Jones Const. Co. v. Marsh USA, Inc*., 2008 WL 2225732 (E.D.Mo. 2008), a plaintiff retained an insurance broker to provide expert opinions as to whether defendant breached its duties under an agreement between the parties. *J.E. Jones,* 2008 WL 2225732 at *1. There, the United States District Court for the Eastern District of Missouri excluded the broker's testimony because his opinions were legal conclusions which invaded the province of the jury. *Id.* Even though the broker had years of experience and was familiar with similar agreements, he was not

### 1. Howarth's Legal Conclusions as to Contract Construction and Interpretation Are Due to be Excluded

Howarth proposes to testify:

- The Metropolitan buildings were insured by Travelers at the time of this loss on an "all risk" basis. This means that essentially, all risks of physical loss are covered unless otherwise excluded in the policy. Adjusters are trained that in this circumstance the starting point is one of coverage. Under "all risk" policies the burden is placed upon the adjuster/Carrier to determine if and prove that one or more of the specific exclusions in the policy apply before any claim denial or claim limitation should be imposed, but the starting point for any claim is one of coverage.

- The decision by Travelers to not allow this policyholder to enjoy their right to Appraisal, as provided for in their policy, was not proper or good and violates the requirement of good faith claims handling.

Ex. 3, p. 5.

In *Jackson v. Mizuho*, this Court granted the defendant's motion to exclude plaintiff's expert witness's testimony which contained numerous inadmissible legal conclusions. *Mizuho Orthopedic Sys., Inc.,* 2012 WL 13028557, at *4. There, this Court noted that "an expert's legal opinion on the meaning of contract terms is an invasion of a court's authority to instruct the jury on the applicable law and is inadmissible under Rule 702." *Id.* at *3. In granting the motion to exclude, this Court stated that the proffered expert opinion was not offered 'for the limited purposes of clarifying or defining terms of art or trade or explaining custom or practice; rather, the majority of [the expert's] opinion interprets the [contract's] language and offers legal conclusions as to . . . the intent of the parties . . . and the respective rights and obligations of the parties." *Id.*. In turn, this Court held that such expert opinion testimony was inadmissible. *Id.* at 4.

---

qualified to testify as to what constitutes a breach of a duty. *Id.* The Court noted that broker's testimony would only serve to advise the trier of fact as to what conclusion to reach, rather than to assist the trier of fact. *Id.*

This Court reached the same result in *American Home Assurance Company v. The Federal Insurance Company*, No. 06-3237-CV-W-FJG, 2007 WL 1459816 (W.D. Mo. May 15, 2007). There, plaintiff's proffered expert opinion merely provided a "legal opinion . . . [as to how settlement proceeds] should be paid amongst the parties based on the expert's interpretation of the insurance policy." *Am. Home Assur. Co.*, 2007 WL 1459816, at *2. In granting defendant's motion to exclude plaintiff's expert opinion, this Court noted that "plaintiff's expert only mention[ed] industry custom and practice in three sentences in his opinion. If plaintiff's expert opinion were simply reduced to defining technical terms and explaining industry custom and practice, plaintiff's expert opinion would amount to one short paragraph at best." *Id.* at *4.

Howarth's expert opinion is the simplistic conclusion that the policy at issue provides coverage for Plaintiff's claimed damages, but Howarth fails to cite a single provision of the policy. Moreover, with regard to Plaintiff's right to appraisal and the policy's grant of coverage, such "opinions" are nothing more than impermissible legal conclusions about an issue of law – the interpretation of the insurance policy at issue. *See, e.g., Am. Home Assur. Co.*, 2007 WL 1459816, at *3 (citing See *U.S. Fid. & Guar. Ins. Co. v. Commercial Union Midwest Ins. Co.,* 430 F.3d 929, 937 (8th Cir. 2005)) ("[I]nterpretation of an insurance contract is a question of law. The Court cannot allow plaintiff's expert to supplement nor substitute the role of this Court.").

Applying these same principles, district courts have consistently struck Mr. Howarth's proffered expert testimony to the extent that he attempted to testify as to legal opinions. For example, the Western District of Kentucky excluded Howarth's opinions which focused "on how the policy terms should be construed" and whether defendant's actions in handling the claim constituted bad faith. *Carneal*, 2013 WL 5939879, at *4 (excluding Howarth's "opinions which said nothing of the factual dispute that must be decided by the jury and are, in effect, little more

than legal conclusions as to the construction and interpretation of the insurance policy"). Similarly, the Northern District of Alabama has struck Howarth's opinions on two separate occasions. First, in *Cole v. Owners Insurance*, 326 F. Supp. 3d 1307, 1320 (N.D. Ala. Mar. 29, 2018), the Northern District of Alabama struck Mr. Howarth's opinion to the extent that he testified as to legal questions, and most recently, in *Haman, Inc. v. Chubb Custom Ins. Co.*, No. 2:18-CV-01534-KOB, 2021 WL 913338, at *4 (N.D. Ala. Mar. 10, 2021), Howarth was again precluded from testifying as to the very matters on which he seeks to opine in the present case.

Because the vast majority of Howarth's proffered expert opinion contains little more than numerous inadmissible legal conclusions which will not assist the trier of fact., this Court should likewise exclude his Howarth's opinions.

### 2. Howarth's Statements Regarding Intent and Travelers Investigation and Handling of the Claim Are Due to Be Excluded

"[E]xpert opinion testimony about the intent of parties is inadmissible." *Mizuho Orthopedic Sys., Inc*, 2012 WL 13028557, at *3; *See Hallmark Cards, Inc. v. Monitor Clipper Partners, LLC* No. 08-0840-CV-W-ODS, 2012 WL 3047308, at *6 (W.D. Mo. July 25, 2012) ("experts cannot offer opinions regarding historical facts or matters of intent, motivation, or other thought processes"). "No expert . . . knows a party's state of mind. Accordingly, an expert's speculation regarding an individual's 'motive, intent, or state of mind' should be excluded from evidence." *In Re RFC & ResCap Liquidating Tr. Litig.*, No. 13-CV-3451 (SRN/HB), 2018 WL 4489685, at *15 (D. Minn. Sept. 19, 2018) (quoting *In re Baycol Prod. Litig.*, 532 F. Supp. 2d 1029, 1054 (D. Minn. 2007)) (internal citation omitted).

Though Howarth may attempt to offer his opinion under the guise of industry practice, Howarth does cite any specific standards or procedures in his report. Instead, Howarth's report is

replete with blanket statements regarding Travelers' intent and claims handling including, but not limited, to the following:

- The Travelers adjusting team did not attempt in good faith to effectuate a prompt, fair and equitable settlement of this claim.

- The omissions are so numerous and egregious that they lead one to wonder if these omissions were intentional. This approach to handling a property damage insurance claim is not good faith conduct, from an adjuster's perspective, whether intentional or not.

- An extreme undervaluation of a fire loss that results from careless and inadequate investigative work is not good faith claims handling. Failing to implement and adopt standards for the proper investigation of a claim is not in the best interest of the policyholder. Denying claims or portions of claims without conducting reasonable investigations based upon available information should not happen, not ever. People buy insurance coverage to help them quickly in time of severe crisis following a major fire loss like this one.

Ex. 3, pp. 4-5.

As stated, Howarth's report does not identify applicable industry standards, so any opinions as to Travelers' investigation and handling of the claim are meaningless. Throughout Howarth's report, he seemingly attempts to opine that Travelers' actions were not in accordance with industry standards, customs, and practices, yet notably, Howarth fails to identify any specific standard or cite any rule or other authority supporting his opinions. Howarth's report essentially seeks to have this Court "take his word for it." To find such testimony reliable, the Court would have to do just that and would have to "take a leap of faith" and rely on Howarth's mere *ipse dixit* and assurance that his testimony is based on accepted standards.

Applying *Jackson* and *American Home Assurance Company*, Howarth's opinions regarding Travelers' intent and Travelers' investigation and handling of the claim should likewise be excluded. Under the Federal Rules of Evidence and well-established precedent of this Court, such opinions are inadmissible. *See Hogan v. AT&T*, 812 F.2d 409, 411 (8th Cir. 1987) (trial court

17

may exclude opinion testimony if it is so couched in legal conclusions that it supplies the fact finder with no information other than what the witness believes the verdict should be).

### D. Howarth's "Summary of Opinions About the Handling of the Fire Claim" are not Based on Sufficient Facts

Similar to Howarth's opinions regarding causation, Howarth fails to consider relevant facts and fails to reference a single policy provision, insurance regulation, or industry standard. "A proper expert opinion on this type of issues would typically cite the sections of the policy that would be applicable to the plaintiffs' claims, and then would apply the relevant policy provisions to the facts of the case." *Tactical Stop-Loss*, 2010 WL 427779, at *6.

In *Tactical Stop-Loss*, Plaintiff's proffered expert report "made a bald conclusion on an ultimate issue . . ., without performing any intervening analysis as to why th[e insurance] claim ought to be paid." Similar to the report at issue in *Tactical Stop-Loss*, Howarth's report fails to address the factual issues surrounding Plaintiff's claim. These factual issues, ignored by Howarth, dictate whether Travelers' actions deviated from insurance industry customs and practices, which if considered would demonstrate Travelers complied with such standards. Howarth's failure to cite a single industry practice, unfair trade practice provision, insurance regulations, or any portions of the policy renders Howarth's opinions as to Travelers' investigation and adjustment of the claim inadmissible because such opinions are not based on sufficient facts. Accordingly, Howarth's report is due to be struck, and Howarth should be excluded from testifying as to any opinion contained within his summary of opinions regarding Travelers' investigation and handling of Plaintiff's claim.

### E. Howarth's Opinions are Inadmissible Due to Plaintiff's Failure to Comply with the Requirements of Federal Rule of Civil Procedure 26(a)(2).

Rule 26(a)(2)(B) requires a party's expert witness report contain, in part, the following: "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; and (iii) any exhibits that will be used to summarize or support them." Fed. R. Civ. P. 26(a)(2)(B). In addition, the Court's Amended Scheduling Order set forth strict requirements regarding expert testimony and the submission of expert reports. (Doc. 44, pp. 4-5 ¶ 7). For example, the Initial and Amended Scheduling Order states that "One of the purposes of the Rule 26(a)(2)(B) expert report is to set forth the substance of a direct examination. If properly done, the expert report should eliminate the need for deposing some experts. Consequently, detailed statements in the report are essential." (Doc. 44 p. 5 ¶ 7(b)).

As detailed above, although unqualified to offer expert testimony as to the disputed cause of loss, Howarth did not provide an expert report containing his cause of loss opinions, the basis for those opinions, the facts or data he considered in forming those opinions, or exhibits used to summarize or support his opinions. With regard to valuation, the only area in which Howarth is qualified to offer an expert opinion, he simply provided a dollar amount of claimed damages to restore the property to its condition prior to the September 2018 fire. Notably, Howarth does not state that this amount is the total amount Plaintiff is entitled to recover under the policy. Moreover, Howarth qualifies his valuation opinion and states that the claimed valuation of damages is "the best [he] can determine at this time" and failed to supplement his report to provide a finalized computation of Plaintiff's claimed damages. Ex. 3, p. 4.

The requirement of full and complete disclosure of experts, and of the opinions they hold, is not a mere recital in the litany of the pretrial schedule; rather, full and complete expert disclosures are an express requirement of Rule 26(a)(2)(B). *Upsher-Smith Labs, Inc. v. Mylan*

19

*Labs, Inc.*, 944 F. Supp. 1411 (D. Minn. 1996). Moreover, under Rule 37(c)(1), unless the non-movant can show that its failure to disclose information required by Rule 26(a)(2) was substantially justified or that such failure is harmless, exclusion of undisclosed information is automatic. *1st Source Bank v. First Resource Fed. Credit Union*, 167 F.R.D. 61 (N. D. Ind. 1996).

Courts have consistently struck expert testimony for failure to comply with Rule 26(a)(2). *See China Res. Prods. (U.S.A.) Ltd. v. Fayda Int'l, Inc.*, 856 F.Supp. 856, 866-67 (D. Del. 1994) (expert who did not provide report not allowed to testify); *Upsher-Smith Labs.*, 944 F. Supp. at 1440 (striking experts whose uninformative, boilerplate reports wholly fail[ed] to disclose, in any intelligible way, the facts and rationale … under[lying] the opinions expressed therein); *1st Source Bank*, 167 F.R.D. at 66 (precluding expert from testifying about subject merely listed in expert's report; listing subject is not the same as providing opinion and basis for opinion).

Furthermore, Plaintiff and Howarth have failed to provide facts he considered in forming his opinions.  For example, Howarth's "Principle Sources of Information Relied Upon in Reaching My Opinions and Conclusions" includes various "categories" of sources including, but not limited to, the following:

- Written Communications, that are in my file and that are between Bomasada associates and various parties, Maxus associates and various parties, Travelers, and the like.

- Numerous Miscellaneous Invoices related to the initial, temporary and permanent repairs to the building phases.

- Numerous documents, related to the loss of income being suffered by the insured that are in my file, as well as discussions had with the insured's associates knowledgeable of the loss of income damages.

- Numerous Narratives, Memos and the like, that I requested from Bomasada, Maxus and others with information about circumstances, expenses, questions, valuations and events surrounding this fire loss, all of which are in my file.

Ex. 4.

20

With regard to written communications, documents initially produced by a third party pursuant a subpoena duces tecum revealed that Howarth exchanged or was involved in over 1,000 emails with Plaintiff, the named insured, and/or claims consultants in his role as an appraiser. Ex. 5. Although Plaintiff produced some of these emails following the third party's production of documents, despite specific requests for Howarth's expert reliance materials, Plaintiff has failed to produce these documents as well as other "categories" of documents detailed in Howarth's "Principle Sources of Information Relied Upon in Reaching My Opinions and Conclusions."

This failure to produce Howarth's expert reliance materials and failure to provide an expert report including his cause of loss opinions was not substantially justified nor was it harmless. Because of Howarth's failure to comply with the disclosure requirements of Rule 26, Travelers will be unable to effectively depose Howarth regarding his cause of loss opinions or to rebut them at trial. *See Tactical Stop-Loss LLC*, 2010 WL 427779, at *1 ("[T]he purpose of these expert witness disclosures is to allow 'the opposing party a reasonable opportunity to prepare for effective cross-examination and perhaps arrange for expert testimony from other witnesses.'") (quoting *Jacobsen v. Deseret Book Co.,* 287 F.3d 936, 953 (10th Cir.2002)). Furthermore, Plaintiff has not attempted to cure these defects. *See Id.* (granting defendant's motion to strike expert testimony where plaintiff failed to meet requirements of Rule 26 and following notice, took no steps to cure these defects). Accordingly, Howarth's report is due to be struck in its entirety for failure to comply with the mandatory requirements of Rule 26 and the Court's Amended Scheduling Order, and Howarth should be precluded from offering any expert testimony.

## IV.    CONCLUSION

As the foregoing reasons demonstrate, Howarth's proffered opinion testimony is inadmissible, and his report is due to be struck in its entirety. With regard to causation, Howarth

is not qualified to offer an expert opinion as to the disputed cause of loss issues. Notwithstanding Howarth's lack of qualifications, he has provided no basis for his opinions as to causation.

Second, the majority of Howarth's proffered opinions are inadmissible legal conclusions and invade the province of the jury. Such testimony is only intended to advise the trier of fact as to what ultimate conclusion to reach. Howarth's "testimony as to what the law requires, allows, or prohibits; or testimony about what a court likely would decide on a question of law" should be excluded as it "exceed[s] the province of an expert witness." *See Union Pac. R.R. Co. v. Colony Nat'l Ins. Co.*, No. 8:13CV84, 2018 WL 1054315, at *3 (D. Neb. Feb. 23, 2018). Moreover, similar to Howarth's opinions regarding causation, Howarth fails to cite to a single policy provision, insurance regulation, or industry custom and practice. Howarth's failure to apply the policy and industry standards to the facts of the case fails to satisfy the requirements of Rule 403, *Daubert*, and established precedent of this Court.

Furthermore, Howarth's report fails to satisfy the express and mandatory requirements of Federal Rule of Civil Procedure 26(a)(2)(B) and the Court's Amended Scheduling Order. Accordingly, Howarth's report is due to be struck in its entirety, and he should be precluded from offering expert testimony in this case.

WHEREFORE Travelers respectfully requests that Plaintiff's expert witness disclosure of Chuck Howarth be struck for the reasons set forth herein and that Plaintiff be enjoined from proffering Chuck Howarth's expert testimony.

Respectfully submitted,

s/ Brenen G. Ely
Brenen G. Ely (*pro hac vice*)
Kenneth W. Boyles, Jr. (*pro hac vice*)
ELY & ISENBERG, LLC
3500 Blue Lake Drive, Suite 345
Birmingham, Alabama 35243

22

Telephone: (205) 313-1200
Facsimile: (205) 313-1201
bely@elylawllc.com
kboyles@elylawllc.com

Dale L. Beckerman, MO Bar #26937
Daniel E. Hamann, MO Bar #28164
DEACY & DEACY, LLP
920 Main Street, Suite 1000
Kansas City, Missouri 64105
Telephone: (816) 421-4000
Facsimile: (816) 421-7880
dlb@deacylaw.com
deh@deacylaw.com

*Attorneys for Defendant Travelers Property Casualty Company of America*

23

## **CERTIFICATE OF SERVICE**

I do hereby certify that on April 9, 2021, I electronically submitted the foregoing with the Clerk of the Court for the United States District Court for the Western District of Missouri using the CM/ECF system, which will send a Notice of Electronic Filing to the following counsel of record:

Michael J. Abrams
Kimberly K. Winter
Brian W. Fields
Noah H. Nash
Lathrop GPM, LLP
2345 Grand Boulevard, Suite 2200
Kansas City, Missouri 64108-2618
Telephone: (816) 292-2000
Facsimile: (816) 216-2001
michael.abrams@lathropgpm.com
kim.winter@lathropgpm.com
brian.fields@lathropgpm.com
noah.nash@lathropgpm.com

s/ Brenen G. Ely
**OF COUNSEL**