# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| MAXUS METROPOLITAN, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No: 20-cv-00095-FJG |
| | ) |
| TRAVELERS PROPERTY CASUALTY | ) |
| COMPANY OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

## REPLY SUGGESTIONS IN SUPPORT OF
## TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA'S
## MOTION TO EXCLUDE EXPERT TESTIMONY OF DANIEL M. BAXTER

Defendant Travelers Property Casualty Company of America ("Travelers") submits the following Reply Suggestions in Support of its Motion to Exclude Expert Testimony of Daniel M. Baxter ("Baxter"):

**I.      INTRODUCTION**

Plaintiff bears the burden of establishing that Baxter's opinions are reliable and admissible. FED. R. EVID. 702; *Daubert v. Merrell Dow Pharm., Inc.* 509 U.S. 579, 597 (1993). Instead of squarely meeting that burden, similar to Plaintiff's Response to Travelers' Motion to Exclude Irmiter and Carlson, Plaintiff again attempts to distract the Court from the true evidentiary issues by focusing instead on Baxter's qualifications and misconstruing language of the insurance contract at issue.

**II.     ARGUMENT**

Plaintiff does not dispute that Baxter's Rule 26 disclosure did not address the test results his own laboratory generated in February 2020. Rather, Maxus argues that the results were essentially more "garbage" and were redundant. Unfortunately for Plaintiff, the subjective quality

of the results is not the litmus test for whether an expert is required to address all of the data – Baxter was required to address it, but he did not. As explained below, Baxter's refusal to consider and address these results is textbook, impermissible cherry-picking, and on this point, Maxus has failed to carry its burden of proof to demonstrate that Baxter's opinions are admissible.

Instead, Plaintiff argues that Travelers' approach of considering "Baxter as though he were conducting a stand-alone analysis of Metropolitan" is too broad, and as a result, he was not required to review the data from his own laboratory. (Doc. 92, p. 11 of 23). Plaintiff, in an obvious effort to sidestep Baxter's blatant cherry-picking seeks to limit Baxter's role to "reviewing Travelers' experts' action with respect to sampling collection and analytical methods." (Doc. 92, p. 11 of 23). However, even under this restricted role, Baxter's choice to ignore his own data cuts so deeply into the foundation of his opinions that they cannot be salvaged. This limitation does not change the fact that Baxter ignored data from his own laboratory in order to offer opinions regarding the reliability of Travelers' collection and sampling methods. In fact, data from Baxter's own laboratory confirms the reliability of Travelers' collection and sampling methods, for Baxter's lab rendered the same results as Travelers. While Travelers' understands the limited scope of Baxter's role in this case, Baxter may not ignore his laboratory's own data. Baxter's willful avoidance of this data renders his opinions inadmissible.

Moreover, Travelers does not dispute that Baxter did not conduct a stand-alone analysis of the Metropolitan and the fire, for it is true that the basis of Baxter's understanding of the fire is the inadmissible opinions of Plaintiff's unqualified expert, Thomas Irmiter ("Irmiter"). Therefore, his opinions based on this flawed understanding of the fire further renders his opinions unreliable and inadmissible.

### A. Baxter's Opinions Regarding Travelers' Collection and Sampling Methods Are Unreliable and Inadmissible.

Baxter first opines that the sampling methods used by Travelers' experts are inappropriate and inaccurate for the assessment of structure related fires and states "[t]he use of wipe sampling and TEM analysis procedure will result in the under-reporting of any fire/combustion particles present." (Doc. 92-9, p. 14 of 37). However, in order to arrive at this opinion, Baxter turned a blind eye to the findings of his own laboratory rendering this first opinion inadmissible. *See LeClerq v. The Lockformer Co.*, No. 00-C-7164, 2005 WL 1162979 at *4 (N.D. Ill. Apr. 28, 2005) (excluding an expert whose report did not address results from his own company's sample analysis that did not support the expert's opinions).

Plaintiff argues that the wipe sampling employed by Travelers' expert was inappropriate and would not preserve the integrity of the aciniform particles. Plaintiff also argues that the TEM analysis performed for Travelers by RJ Lee destroyed any of the materials Travelers insured against, specifically, that those substances "did not stand a chance against the TEM analysis." While Baxter opines that Travelers' experts' sampling and analytical methods would result in the under-reporting of any fire/combustion particle present, it is undisputed that **his own** laboratory conducted its own analysis using its own chosen analytical methods and protocols. Plaintiff concedes that "Baxter's laboratory EAA analyzed some of those samples under the full range of reflected and transmitted light with optical microscopy." (Doc. 92, p. 19 of 23.) According to his own classification range, EAA's analysis did not result in a single sample that indicates soot or other "fire/combustion residue concentration" beyond typical background levels.

Moreover, the samples Baxter's laboratory analyzed were collected by FBS through sample collection methods FBS chose, and the results derived from those protocols actually supported Travelers' findings. In fact, Plaintiff concedes as much in stating that FBS "collected samples from the [same] locations" using the "accepted tape lift method." (Doc. 92, pp. 18-19 of

3

23.) In turn, as Plaintiff states, EAA's data "is not contradictory" and "is redundant" of the data produced RJ Lee Group, on which Travelers experts rely. (*See* Doc. 92, p. 16-17 of 23.) However, Plaintiff argues that "[t]hese redundant results do not change Baxter's opinion in any way." (Doc. 92, p. 17 of 23.)

This is a textbook situation of "'cherry-picking', which requires exclusion under *Daubert. See In re Prempro Prod. Liab. Litig.*, No. MDL 4:03-CV-1507-BRW, 2012 WL 13033298, at *3 (E.D. Ark. Apr. 11, 2012) ("cherry-picking" positive studies, or specific data . . . while ignoring contrary studies or data raises red flags in a *Daubert* analysis. . . [and] **results in exclusion of the testimony only when the expert formed an opinion before reviewing the scientific evidence and then ignored 'the great weight of the evidence that contradicts**.'") (emphasis added). Here, Baxter opined that Travelers' methods of using wipe samples and TEM analysis would produce unreliable results, yet Plaintiff rests on its bare argument that Baxter's own laboratory's data was not ignored and does not impact his opinions. However, Baxter neither cites nor lists these results as a basis for his opinion. Moreover, Baxter has not submitted an affidavit to support Plaintiff's statements or otherwise explain why the results were ignored, creating the obvious question of why, when the explanation of the EAA results was so simple, a scientist such as Baxter failed to address them in his report or offer some other explanation as to why they were completely concealed. While one could speculate as to the answer, simply by virtue of having left this question unanswered, it is clear that Maxus has failed to carry its burden to establish that Baxter's cherry-picking does not run afoul of Rule 702.

As detailed in Travelers' motion, Mr. Baxter's avoidance of his own data in order to further a narrative he was retained to espouse is fatal to the reliability of his opinions regarding Travelers' collection and sampling methods. Scientific principles require evaluation of all data, and it is

4

abundantly clear that Baxter has not and will not do that. Accordingly, Baxter's unreliable opinions regarding Travelers' experts' sampling techniques and resulting data are inadmissible and due to be excluded.

> **B.  Baxter's Opinions Regarding Travelers' Selected Sampling Locations Are Unreliable and Inadmissible.**

While Plaintiff argues that "[a] proper sampling location is informed by the fire being analyzed," (Doc. 92, p. 9), Plaintiff fails to address Baxter's fundamentally flawed understanding of the fire, which is based on communications with one of Maxus' unqualified experts, Tom Irmiter. (Doc. 92, p. 12 of 23). While Plaintiff argues that Baxter's opinion regarding sampling locations is "based on [his] background conducting both field inspections and subsequent laboratory analysis," (Doc. 92, p. 11), Baxter's report clearly states that his understanding of the fire is as follows:

> It is also my understanding by phone communications and email from Mr. Tom Irmiter of Forensic Building Sciences that *"Smoke enveloped the building. So entry was both internal through exterior windows and vents and then deposited through the building by operating HVAC systems. Fire blocking has not been completed in phases 4-5 and this added to the cross contamination."*

(Doc. 72-4, pp. 8–9 of 37)(emphasis in original).

In an attempt to cure Baxter's reliance on Irmiter's inadmissible fire dynamics and building pressurization opinions, Plaintiff incorrectly states that "Baxter's opinion is not based on the fire's movement or pressurization." (Doc. 92, p. 11 of 23). However, the movement of smoke and pressurization of the building is, in fact, the basis for Baxter's opinions regarding "proper" sampling locations. For example, Baxter states:

> 1.  Aciniform soot can migrate into wall cavities when the interior spaces have become **pressurized**, are significant heated, or the room interior has an elevated concentration of smoke as *was likely* in the case of this fire.

5

> 2. The fine aciniform soot materials will typically migrate through penetrations with a **pressure differential or concentration gradient** such as wall outlets, switch plates, can lighting, or where there is an unsealed penetration.

(Doc. 92, p. 12 of 23; Doc. 72-3, p. 15 of 37 (emphasis added).

As detailed in Travelers' Motion to Exclude Expert Testimony of Thomas Irmiter and Neil Carlson, Irmiter is unqualified to offer opinions regarding fire dynamics (*e.g.* fire behavior, smoke movement, etc.). Therefore, Baxter's opinions based on Irmiter's unqualified opinions regarding fire dynamics and building pressurization are due to be excluded. *See Barrett v. Rhodia, Inc.*, 606 F.3d 975, 982 (8th Cir. 2010) (excluding an expert's opinions to the extent her opinion regarding the source and concentration of exposure relied entirely on the speculative and inadmissible opinion of another expert). Plaintiff attempts to differentiate the matter at hand from the facts in *Barrett* by stating that Baxter's opinion relates to the appropriateness of Travelers' experts analyses of fire by-product. (Doc. 92, p. 15 of 23). However, such opinion is inarguably based on his communications with Irmiter regarding the fire's behavior and conditions that allegedly existed to distribute combustion by-product, a science in which Irmiter is not qualified to opine. Baxter's acceptance of Irmiter's unqualified and speculative opinion is fatal to Baxter's opinions, for Irmiter's theory of the fire's behavior constitutes the foundational assumption upon which Baxter based his opinion regarding "proper" sampling locations. Accordingly, Baxter has not established that his opinions regarding sampling locations are "informed by the fire being analyzed." Instead, his opinions are based on the unreliable opinions of an unqualified expert. Therefore, Baxter's opinions as to "proper sampling locations" are likewise unreliable and inadmissible.

### C. Baxter's opinion should be limited to rebuttal testimony.

To the extent that any of Baxter's opinions are admissible, which they are not, his testimony should be limited to rebuttal testimony. Federal Rule of Civil Procedure 26(a)(2)(D)(ii)

characterizes rebuttal experts as those who present "evidence [that] is intended solely to contradict or rebut evidence in the same subject matter identified by another party under Rule 26(a)(2)(B) or (C)." Plaintiff states that Baxter's "role is limited to reviewing Travelers' experts' actions." (Doc. 92, p. 11 pf 23.) As such, Plaintiff argues that Travelers cannot consider Baxter's testimony as if he were conducting an independent analysis. (*Id.*) In turn, Plaintiff has made clear that the entirety of Baxter's opinions constitutes rebuttal evidence. When an expert's opinion is limited to rebuttal testimony, that expert should not testify in the party's case-in-chief. *See Lindner v. Meadow Gold Diaries, Inc.*, 249 F.R.D. 625, 636 (D. Haw. 2008); *see also Specter v. Tex. Turbine Conversions, Inc.*, No. 3:17-CV-00194, 2020 WL 72343369 at *4 (D. Alaska Dec. 8, 2020); *Johnson v. Grays Harbor Cmty Hosp.*, No. C06-5502BHS, 2007 WL 4510919 at *2 (W.D. Wash. Dec. 19, 2007). An expert who provides rebuttal testimony should only be called to testify after the court has heard testimony regarding the opinions that the rebuttal expert seeks to rebut. *Id*; *Theoharis v. Rongen*, No. C13-1345RAJ, 2014 WL 3563386 at *3 (July 18, 2014). Thus, to the extent that this Court finds any of his opinions to be admissible, those opinions should be properly limited as rebuttal testimony, which cannot be offered unless and until Travelers' experts have given testimony as to the opinions Baxter intends to rebut.

**IV.    CONCLUSION**

Plaintiff offers Baxter's opinions in an attempt to support the notion that Travelers' experts "turned a blind eye" to appropriate sampling procedure; however, Plaintiff's opposing statement makes clear that it hopes this Court will "turn a blind eye" to the unreliability of circumstances within which Baxter's opinion was generated. Plaintiff ignores that Baxter's testimony is inherently unreliable because it contradicts his own findings. Further, Plaintiff ignores that Baxter's opinions are founded upon a wholly unreliable understanding of the behavior of the fire

7

that allegedly distributed fire combustion by-products throughout the other structures of the Metropolitan. Plaintiff appears to insist that such unreliable circumstances are unimportant because Baxter's testimony is limited in scope to a critique of Travelers' experts' conduct. However, Plaintiff cannot limit its way around the inherent unreliability of Baxter's testimony.

WHEREFORE, Travelers respectfully requests that this Court grant Travelers' Motion to Exclude Expert Testimony of Daniel M. Baxter.

Respectfully submitted,

s/Brenen G. Ely
Brenen G. Ely (*pro hac vice*)
Kenneth W. Boyles, Jr. (*pro hac vice*)
ELY & ISENBERG, LLC
3500 Blue Lake Drive, Suite 345
Birmingham, Alabama 35243
Telephone: (205) 313-1200
Facsimile: (205) 313-1201
bely@elylawllc.com
kboyles@elylawllc.com

Dale L. Beckerman, MO Bar #26937
Daniel E. Hamann, MO Bar #28164
DEACY & DEACY, LLP
920 Main Street, Suite 1000
Kansas City, Missouri 64105
Telephone: (816) 421-4000
Facsimile: (816) 421-7880
dlb@deacylaw.com
deh@deacylaw.com

*Attorneys for Defendant Travelers Property Casualty Company of America*

**CERTIFICATE OF SERVICE**

I do hereby certify that on July 12, 2021, I electronically submitted the foregoing with the Clerk of the Court for the United State District Court for the Western District of Missouri using the CM/ECF system, which will send a Notice of Electronic Filing to the following counsel of record:

Michael J. Abrams
Kimberly K. Winter
Brian W. Fields
Noah H. Nash
Lathrop GPM, LLP
2345 Grand Boulevard, Suite 2200
Kansas City, Missouri 64108-2618
Telephone: (816) 292-2000
Facsimile: (816) 216-2001
michael.abrams@lathropgpm.com
kim.winter@lathropgage.com
brian.fields@lathropgpm.com
noah.nash@lathropgpm.com

        s/Brenen G. Ely
        OF COUNSEL