IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| MAXUS METROPOLITAN, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 20-cv-0095-FJG |
| | ) |
| TRAVELERS PROPERTY CASUALTY | ) |
| COMPANY OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

## PLAINTIFF MAXUS' DISCOVERY BRIEF

Pursuant to the Court's Order of August 24, 2021 (Doc. 119), Maxus Metropolitan, LLC ("Maxus") submits this brief in support of its request to compel discovery regarding Travelers' handling of Maxus' claim (specifically how previously paid amounts have been allocated and what amounts Travelers believes are still owed), and Travelers' experience paying or denying similar claims for soot and ash contamination. Specifically, the Court ordered Travelers to describe the documents it states it has previously produced on the claims-handling requests, and to explain why it believes it only has to provide information on soot and ash contamination that resulted in a Missouri judgment or where action was taken by the Missouri Department of Insurance, even though the relevant property is not located in Missouri. Additionally, the Court ordered Maxus to provide a short brief confirming whether it has received the described documents from Travelers and citing caselaw supporting its position that it is entitled to discover additional information on the soot and ash contamination portion of its claim.

**I.      Timeliness of the Requests**

As an initial matter, Travelers claims that because discovery is now closed, Maxus' requests to obtain discovery on the topics set forth in its Rule 30(b)(6) deposition notice that remain unanswered by Travelers' corporate representative are untimely. Notably, Maxus initially sent the proposed 30(b)(6) topics and requested deposition dates on March 3, 2021, well before discovery was set to close. Because there were multiple delays in scheduling the deposition, none of which were caused by Maxus[1], the deposition ultimately was pushed back to June 25, 2021. Maxus and Travelers discussed the scope of the topics in March, and after that discussion, Maxus understood that Travelers agreed to the appropriateness and scope of the deposition topics. It was not until a few days before the rescheduled deposition that Travelers formally objected to several of the topics, and Maxus responded on June 24. (*See* **Objections and Maxus' response attached as**

---

[1] On March 3, 2021, Maxus sent the original deposition topics and requested dates for the deposition between March 23 and March 31. Having received no response, on March 8, Maxus followed up on the request. Travelers' counsel responded on March 9 that he was checking on the dates. On March 12, Travelers' counsel asked to discuss the scope of the topics and Maxus' counsel said she was available that afternoon. Maxus was still waiting for potential deposition dates from Travelers. On March 19, counsel for Maxus and Travelers had a conference call to discuss the scope of the deposition topics. On March 26, Maxus was still requesting dates to take the deposition and the parties agreed to request an extension of discovery until April 30. On April 4, Travelers' counsel stated that he was trying to find dates for the deposition during the first two weeks of May. On April 6, Maxus' counsel stated that the first week of May was open, as well as the 10th, 11th or 14th. Travelers did not respond. Maxus followed up on April 8 and was told Travelers' counsel was still checking on available dates. On April 9, Travelers stated that May 11 or May 12 would potentially work and we would know by the end of the day. On April 12, Maxus again requested confirmation of the date and Travelers responded that May 12 was available and the deposition was scheduled for that day. On May 3 Travelers stated for the first time since the March 19 conference call that it wanted to again discuss the scope of Topic 9 of the deposition topics (related to soot and ash contamination). Travelers' counsel did not follow up with a call as expected. On May 6, Travelers' counsel sent an email regarding the scope of the deposition topics. Maxus responded in detail on May 7 regarding Travelers' belated objections. On May 10, Travelers cancelled the deposition due to illness and promised to get new potential dates. On May 18 Travelers suggested scheduling the deposition for late May or June. However, around this same time, Travelers produced thousands more pages of documents, so Maxus requested time to review those documents before the deposition. Finally, on May 24, Travelers suggested June 25, 29 or 30 for the deposition. On May 27, Maxus asked to take the deposition sooner, but Travelers stated that that was not possible. *See* correspondence between Maxus and Travelers attached hereto as **Exhibit A**.

2

47465095v.1
Case 4:20-cv-00095-FJG    Document 121    Filed 08/27/21    Page 2 of 11

**Exhibits B and C).** During the deposition, Maxus and Travelers discussed the witness's failures and inability to respond to certain questions, with Travelers even suggesting the parties may need to involve the Court, so the present dispute is no surprise to Travelers. *See, e.g.,* Doc. 106-8, p. 25 of 61, trp. 92:10 to 93:10.

The court has wide discretion based on its inherent control and authority over discovery to reopen or order additional time for depositions. *See Miravalle v. One World Technologies, Inc.*, No. 4:18 CV 304 JMB, 2020 WL 7396999, at *4 (E.D. Miss. Dec. 17, 2020) ("District courts are accorded wide discretion in dealing with discovery matters."); *Simmermaker v. Cedar County Sheriff's Department*, No. C18-0049-LTS, 2020 WL 6128224, at *12 (N.D. Iowa Aug. 4, 2020) ("A district court has discretion whether to reopen the record and accept additional evidence on an issue (citing *Briscoe v. Fred's Dollar Store, Inc.*, 24 F.3d 1026, 1029 (8th Cir. 1994)). Additionally, a motion to compel further deposition testimony is appropriate when a witness is unable or chooses not to answer deposition questions. *See, E.E.O.C. v. Danka Industries, Inc.*, 990 F. Supp. 1138, 1144 (E.D. Miss. 1997). Here, Travelers' designated witness was unwilling or unable to answer several questions about the claims handling process (including payments and amounts that remain owed) and the claims experience at Travelers with regard to soot and ash claims. Accordingly, Maxus is entitled to continue the deposition with respect to these matters.

## II. Travelers' Produced Documents Do Not Negate the Need for its Witness to Testify About the 30(b)(6) Topics

Maxus can confirm that it has received the documents listed by Travelers in its Discovery Briefing (Doc. 120). However, there is nothing in the documentation provided that discusses what amounts Travelers believes are still owed for any portion of this claim. Maxus is entitled to witness testimony regarding this important piece of the claim handling. Whether payments have been unreasonably withheld or delayed directly relates to Maxus' vexatious refusal claim.

3

Additionally, with regard to the property damage portion of the claim, the documents produced by Travelers provide, for the most part, lump sums based on the estimates prepared by Travelers' consultant, J.S. Held. However, the construction is now substantially complete with regard to Phase 6 and Maxus has been submitting third-party invoices and evidence of payment for work completed as the construction progressed. Travelers now states that it owes nothing more than what it has previously paid for Phase 6, although Maxus believes Travelers owes more than $1 million for the property damage portion of the claim for Phase 6 alone (as well as other amounts for the other 5 phases of the project). The problem is that there is no way for Maxus to determine how the amounts it has submitted for *actual, completed work,* are being compared (or not) to the estimates completed by J.S. Held. When asked how Maxus might understand where the disconnect has occurred between Travelers' estimate and the evidence of actual payments made by Maxus for construction work, Travelers' witness stated that "Maxus should be able to go line by line to determine if [the Xactimate] is accurate based on what [it] is saying was present at the time of the fire." Doc. 106-8, p. 28, trp. 102:13-103:4. Travelers' attempt to make the insured determine how or why Travelers has failed and refused to pay actual amounts paid to reconstruct Phase 6 is highly inappropriate. Travelers' corporate representative should be able to provide testimony to explain why it may have disregarded evidence of payments made by the insured and how those amounts compare to the estimate Travelers apparently relies upon. It is not the insured's burden to try to decipher Travelers' claims' handling or to determine why Travelers has denied a portion of the claim. Maxus is entitled to a detailed explanation of Travelers' denial of various portions of the claim, including how or why Travelers has ignored or disregarded evidence of claim payments made by the insured.

4

Relatedly, the fact that there was at one time a mediation with regard to amounts owed for Phase 6 is irrelevant here. First, the mediation is now concluded, so the point is moot. Second, Maxus was and is only seeking information related to the internal claims handling process at Travelers to which it is entitled. Simply because there was a mediation in process at one time, does not negate Travelers' ongoing good faith obligation to evaluate claim documentation as it is provided and to make payments for amounts it believes are owed the insured based on that information.

The fact that Travelers has now belatedly and inappropriately attempted to invoke the appraisal process set forth in the policy for Phase 6 is irrelevant to its obligation to provide the requested information as part of the discovery process.

### III. Maxus is Entitled to Discovery on Travelers' Treatment of Similar Soot and Ash Contamination Claims

Topic 9 of Maxus' 30(b)(6) deposition notice requested testimony of Travelers' corporate representative on "Travelers' experience investigating and paying or denying claims under Construction PAK–Commercial Inland Marine policies during the past 5 years, for claims related to soot and ash contamination at an insured property after a fire occurred on or near that insured property." This request is specifically tailored to the biggest coverage issue in this case, which is Travelers' denial of Maxus' claim for soot and ash contamination in the buildings at the Metropolitan apartment complex that did not burn down. Travelers' position is essentially that any soot and ash contamination in those buildings was not caused by the massive fire that burned one of the several buildings in the apartment complex to the ground, but rather due to normal background levels of such pollution in Birmingham, Alabama. Travelers refused to allow its witness to testify about this issue, and formally objected to the topic on June 21, 2021, a few days before the deposition was scheduled to occur. Prior to the formal objections, there had been some

discussion between the parties about Topic 9, but Maxus was under the impression that the matter was resolved after receiving no substantive response to its email dated May 7 about this subject. *See* **Exhibit A.** In its formal objections filed June 21, Travelers primarily objected on the bases that the testimony would be irrelevant, overly burdensome, not sufficiently limited in time or scope, and that the request seeks confidential or privileged information. On June 24, Maxus responded to Travelers' concerns. *See* **correspondence attached as Exhibit C.** The deposition went forward the following day.

Under Rule 26(b)(1), Maxus is entitled to discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . ." Fed. R. Civ. P. 26(b)(1). Information need not be admissible in evidence to be discoverable. *Id.* The scope of discovery is extremely broad and encompasses any matter that relates, or that reasonably could lead to other matter that relates to, any issues in the case. *Suljanovic v. State Farm Mut. Auto. Ins. Co.,* 2021 WL 634163 at *1 (E.D. Mo. Feb. 18, 2021). After the proponent of discovery makes a threshold showing of relevance, the burden shifts to the party resisting discovery to explain why discovery should be limited. *Hofer v. Mack Trucks, Inc.,* 981 F.2d 377, 380 (8th Cir. 1993). Maxus is entitled to discovery regarding Travelers' handling of other insureds' claims with respect to the coverage specifically provided in the policy for soot and ash contamination, in part, because Maxus has asserted vexatious refusal to pay this part of its claim. Travelers' pattern and practice with regard to handling these types of claims under the same types of policy for other insureds is undoubtedly relevant to Maxus' vexatious refusal claims (as well as its breach of contract claims) because such information could tend to show the reasonableness (or unreasonableness) of Travelers' position.

Other courts have held that prior claims handling may be not only relevant to the discovery of other admissible evidence but itself admissible in coverage disputes. *See, e.g., Am. Home Assur. Co. v. Merck & Co., Inc.*, 462 F. Supp. 2d 435, 443-44 (S.D.N.Y. 2006) (denying motion *in limine* to exclude evidence of prior claims handling). One way a policyholder might prove bad faith or vexatious refusal to pay is to provide evidence of an insurer's handling of other insureds' claims in similar cases, either "via records of the Insurance Department or records of other litigation involving the same carrier[.]" *Hubbell v. Trans World Life Ins. Co. of N.Y.,* 408 N.E.2d 918, 919 (N.Y. 1980). Accordingly, the policyholder must be allowed discovery of other claims handled by Travelers with regard to the same issue under the same type of policy. *See, Diamond State Ins. Co. v. Utica First Ins. Co*., 829 N.Y.S.2d 465 (N.Y. App. Div. 1st Dept. 2007), the Appellate Division held that "the motion court unduly restricted [the insured's] discovery request" by barring discovery into "other insureds' claims involving the same policy exclusion" at issue in the case because "Utica's prior interpretation of that exclusion directly reflects on whether its proffered interpretation and its refusal to settle in this case were in bad faith." *Id.* at 466. Courts repeatedly have confirmed that an "insured is entitled to disclosure of documents relating to the claim of others who, while in the same circumstances as the insured and having the same insurance coverage with the same insurer, had its similar or identical claim paid by the insurer or not rejected by the insurer." *Leading Ins. Group Ins. Co., Ltd. v. Ysidro Deli & Grocery, Inc.,* No. 651582/12, 2015 WL 6437578, at *3 (N.Y. Sup. Oct. 5, 2012) (citing *Diamond State*); *see also Bloom v. Mut. of Omaha Ins. Co.,* 557 N.Y.S.2d 614, 616 (N.Y. App. Div. 3d Dept. 1990) (allowing discovery of other insured information).

In addition, testimony relating to Travelers' claims handling practices, and Travelers' files relating to other policyholders' claims, is directly relevant to Plaintiff's breach of contract claim

7

47465095v.1
Case 4:20-cv-00095-FJG   Document 121   Filed 08/27/21   Page 7 of 11

because they are relevant to policy interpretation and Travelers' coverage intent. *See, e.g.*, *Mariner's Cove Site B Assocs. v. Travelers Indem. Co.*, No. 04 Civ. 1913 (KMW)(RLE), 2005 WL 1075400, at *1 (S.D.N.Y. May 2, 2005) ("documents regarding similar claims of other insureds … and claims manuals are relevant and discoverable in actions to recover insurance reimbursement"); *Stonewall Ins. Co. v. National Gypsum Co.*, No. 86 CIV. 9671 (SWK), 1988 WL 96159, at *5 (S.D.N.Y. Sept. 6, 1988) (allowing discovery related to other claims and policies because it is relevant to policy interpretation); *Ins. Co. of N. Am. v. UNR Indus., Inc.*, Nos. 92 Civ. 4236 (KTD), 92 Civ. 8182 (KTD), 1994 WL 683423 at *1 (S.D.N.Y. Dec. 6, 1994) (allowing discovery of pleadings from other coverage actions against insurer "involving the meaning and application of the exclusions relied on by INA in this case").

Travelers' attempt to limit discovery to an affidavit identifying claims involving soot or ash contamination "as a result of a fire on premises or nearby under Construction PAK policies that resulted in a Missouri judgment or where action was taken against Travelers by the Missouri Department of Insurance" is wholly insufficient.[2] Although the action was brought in Missouri and the Missouri vexatious refusal statute applies, there is simply no reason to limit discovery in this manner, particularly where the property is located in Alabama. Limiting the requested discovery to matters where a Missouri judgment resulted or action was taken by the Missouri Department of Insurance is far too narrow. Other courts have permitted discovery of all complaints filed with relevant departments of insurance, not just where the department has "taken action" against the insurer. *See, e.g., Morecraft v. Farmers Ins. Co., Inc.*, 2010 WL 1257579, at *3 (N.D. Okla. Mar. 25, 2010) (compelling five years of *complaints filed* with department of insurance

---

[2] Notably, given Travelers' position in this case that the soot and ash contamination in the buildings not destroyed by the fire *was not* caused by the fire, it is uncertain what Travelers would categorize as claims for soot and ash contamination "as a result of a fire. . . ."

8

47465095v.1
Case 4:20-cv-00095-FJG   Document 121   Filed 08/27/21   Page 8 of 11

concerning same "lines of insurance" at issue in lawsuit); *Miller v. Liberty Mut. Fire Ins. Co.*, 2004 WL 897086, at *2 (S.D. W. Va. Apr. 27, 2004) (ordering production of "all information relating to previous bad faith complaints against [insurer] in the State of West Virginia for" five-year period, noting that such information is relevant to unfair trade practice claim and not overly burdensome to insurer); *Colonial Life & Accident Ins. Co. v. Superior Court,* 647 P.2d 86, 90 (Cal. 1982) (court determined that "[o]ther instances of alleged unfair settlement practices" were relevant to the issue of whether the insurer engaged in unfair claim settlement practices, and that "[d]iscovery aimed at determining the frequency of alleged unfair settlement practices" was likely to produce relevant evidence); *Markham v. National States Ins. Co.*, 2004 WL 3019308, at *10 (W.D. Okla. Jan. 8, 2004) (finding that insurer should have produced "a list of all lawsuits against it during the preceding five years, or copies of all complaints and petitions filed against defendant during the preceding five years" in response to insured's discovery request); *Ex parte National Security Ins. Co., Inc*., 773 So.2d 461, 466 (Ala. 2000) (ordering production of list of all lawsuits filed in the State of Alabama within five years for "fraud, deceit, misrepresentation, suppression and/or violations of insurance regulations or statutes," finding that such information "may lead to the discovery of admissible evidence tending to suggest a pattern or practice of intentional wrongful conduct" and further noting that previous actions need not be limited "to the specific focus of the fraud" alleged in pending lawsuit "for the discovery regarding earlier actions to be relevant to [the] action.").

As noted above, once Maxus shows that the discovery requested is relevant, the burden shifts to Travelers to show some reason why the requested information is not discoverable. Here, Travelers has not even attempted to explain how its unsupported generic objections might apply. Travelers' vague, form objections are wholly insufficient to meet its burden. *See, e.g.,*

9

*RightCHOICE Managed Care, Inc. v. Hosp. Partners, Inc.,* 2019 WL 418117, at *4 (W.D. Mo. Feb. 1, 2019).

## IV. Conclusion

In light of the foregoing, Maxus requests that Travelers be compelled to provide the requested witness testimony and related documentation for amounts Travelers previously paid and amounts Travelers believes are owed Maxus for any portion of this claim, as well as Travelers' experience with regard to soot and ash contamination claims.

Dated: August 27, 2021

Respectfully submitted,

/s/ *Michael J. Abrams*
Michael J. Abrams, MO Bar #42196
Kimberly K. Winter, MO Bar #45029
Noah H. Nash, MO Bar #72048
LATHROP GPM LLP
2345 Grand Boulevard, Suite 2200
Kansas City, Missouri 64108-2618
Telephone: 816.292.2000
Facsimile: 816.292.2001
michael.abrams@lathropgpm.com
kim.winter@lathropgpm.com
noah.nash@lathropgpm.com

*Attorneys for Plaintiff*
*Maxus Metropolitan, LLC*

# CERTIFICATE OF SERVICE

  I do hereby certify that on August 27, 2021, I electronically submitted the foregoing with the Clerk of the Court for the United State District Court for the Western District of Missouri using the CM/ECF system, which will send a Notice of Electronic Filing to the following counsel of record:

Dale L. Beckerman, MO Bar #26937
Daniel E. Hamann, MO Bar #28164
DEACY & DEACY, LLP
920 Main Street, Suite 1000
Kansas City, Missouri 64105
Telephone: (816) 421-4000
Facsimile: (816) 421-7880
dlb@deacylaw.com
deh@deacylaw.com

Brenen G. Ely (*pro hac vice*)
Kenneth W. Boyles, Jr. (*pro hac vice*)
ELY & ISENBERG, LLC
3500 Blue Lake Drive, Suite 345
Birmingham, Alabama 35243
Telephone: (205) 313-1200
Facsimile: (205) 313-1201
bely@elylawllc.com
kboyles@elylawllc.com

*Attorneys for Defendant Travelers*
*Property Casualty Company of America.*

              /s/ *Michael J. Abrams*
              An Attorney for Plaintiff